USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/12/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GRAMERCY ADVISORS, LLC and GRAMERCY GLOBAL RECOVERY FUND, LLC,

Plaintiffs,

-against-

ROBERT RIPLEY, FRANCES RIPLEY, THE ROBERT L. RIPLEY LIVING TRUST, ROBERT RIPLEY as trustee for the Robert L. Ripley Living Trust, and CARY INVESTMENTS, LLC,

Defendants.

13-CV-9070 (VEC)

MEMORANDUM OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

The Court assumes the parties' familiarity with the facts of the case and directs readers to its prior opinion. *See* Dkt. 57, *Gramercy Advisors, LLC v. Ripley*, No. 13-CV-9070(VEC), 2014 WL 4188099 (S.D.N.Y. Aug. 25, 2014) ("*Ripley I*"). Defendants move for reconsideration of the Court's August 25, 2014 Opinion denying in part their Motion to Dismiss the First Amended Complaint ("FAC") or, in the alternative, for certification of that Opinion to the Court of Appeals pursuant to 28 U.S.C. § 1292(b). Dkt. 62. For the following reasons, Defendants' motion is DENIED.

**DISCUSSION**

**I. Defendants' Motion for Reconsideration Is Denied**

Defendants first seek reconsideration of the Court's August 25, 2014 Opinion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure and Rule 6.3 of the Local Civil Rules. "A motion for reconsideration should be granted only when the defendant identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or

prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). These requirements are not to be taken lightly; "[t]he Second Circuit has instructed that Rule 60(b) provides 'extraordinary judicial relief' and can be granted 'only upon a showing of exceptional circumstances.'" *Kubicek v. Westchester Cnty.*, No. 08-CV-372(ER), 2014 WL 4898479, at *1 (S.D.N.Y. Sept. 30, 2014) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986)).

Defendants do not purport to identify a change in law or the availability of new evidence but assert that there are two errors with the *Ripley I* opinion that merit reconsideration. First, Defendants urge that the liability cap provision of the Investment Management Agreement ("IMA"), FAC Ex. A § 7(h), trumps the survival provision of the IMA, *id.* § 7(g). *See Ripley I*, 2014 WL 4188099, at *3, *9. Second, Defendants contend that the IMA does not unmistakably provide for indemnification for inter-party suits. *See id.* at *10. The Court is unpersuaded; Defendants' motion for reconsideration is denied.

**A. The Recovery Cap in Section 7(h)**

Defendants contend, as they did in their Motion to Dismiss, that Section 7(h) of the IMA limits their liability to zero dollars. In their Motion for Reconsideration, Defendants now rely on the first word in Section 7(h) – "[n]otwithstanding" – arguing that any other potential ambiguities in the language are solved by this one participial preposition.[1] They did not advance

[1] In its entirety, Section 7(h) provides:

> Notwithstanding anything in this Agreement to the contrary, the aggregate maximum amount that the [Defendants] shall be liable to [Plaintiffs] pursuant to this Section 7 shall never exceed the asset value of the Account on any date that the acts or omissions giving rise to the claim for indemnification shall have occurred.

FAC Ex. A § 7(h). Defendants further contend that, on the "date that the acts or omissions giving rise to the claim for indemnification" occurred, the relevant account had been closed and its value was zero dollars. Reply at 6.

this argument in their Motion to Dismiss, *see* Dkt. 35 at 4-5, 19-20; Plaintiffs contend that Defendants have therefore forfeited this argument by failing to advance it in their initial papers, Mem. Opp. at 5-6; *see, e.g.*, *Deng v. 278 Gramercy Park Grp., LLC*, No. 12-CV-7803(DLC), 2014 WL 4996255, at *1 (S.D.N.Y. Oct. 7, 2014) ("[A] party moving for reconsideration may not advance new facts, issues, or arguments not previously presented to the Court.") (quotation marks and citation omitted). The Circuit has consistently reaffirmed this principle, although noting that it does have the discretion to decide purely legal issues that were waived. *See, e.g.*, *Sompo Japan Ins. Co. of Am. V. Norfolk S. Ry. Co.*, 762 F.3d 165, 188 (2d Cir. 2014) ("The Railroads waived their principal argument . . . because they raised that argument for the first time in their second motion for reconsideration."); *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 53 (2d Cir. 2012) (the Circuit "generally will not consider an argument on appeal that was raised for the first time below in a motion for reconsideration") (quotation marks and alteration omitted); *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 159 (2d Cir. 2003); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Stroh Cos., Inc.*, 265 F.3d 97, 115 (2d Cir. 2001); *Randell v. United States*, 64 F.3d 101, 109 (2d Cir. 1995); *Caribbean Trading and Fid. Corp. v. Nigerian Nat'l Petrol. Corp.*, 948 F.2d 111, 115 (2d Cir. 1991).[2]

Defendants concede that insofar as they did not raise their argument in the motion to dismiss briefing it is forfeited. Reply at 2 (quoting *Mohsen v. Morgan Stanley & Co.*, No. 11-CV-6751(PGG), 2014 WL 4593919, at *3 (S.D.N.Y. Sept. 15, 2014)). As a result, the Court

---

[2] The Court is mindful that challenges to a court's subject matter jurisdiction "'can never be forfeited or waived.'" *Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs and Trainmen*, 558 U.S. 67, 81 (2009) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). Plaintiffs' causes of action for breach of the Subscription Agreement, however, are unaffected by the existence or absence of a cap on recovery for actions brought pursuant to Section Seven of the IMA. *See* FAC ¶¶ 47-50. Because damages under these causes of action will exceed $75,000 if Plaintiffs prevail, capping liability for the first claim at zero dollars would not affect the Court's diversity jurisdiction under 28 U.S.C. § 1332(a).

must evaluate Defendants' assertion that the "notwithstanding" argument was raised in their briefing papers on the motion to dismiss. *Id.* at 1-2. Defendants identify four pages in their motion papers that they claim addressed the scope of the "notwithstanding" clause. *Id.* (citing Dkt. 35 at 3, 17, and 20 n.13, and Dkt. 50 at 3).

First, in the "brief factual and procedural background" section of their brief, Defendants quoted Section 7(h) in its entirety. Dkt. 35 at 3. This does not preserve the argument that its language must be read as trumping Section 7(g)'s survival clause (or any other argument for that matter, as it simply quotes the IMA). Second, on page 17 the brief again quotes Section 7(h) in its entirety. Because it contains no argument about the interaction of that section with other parts of the IMA, it did not preserve the argument Defendants are now making. *Id.* at 17.

Footnote 13 asserts, without citation to authority, that "Plaintiffs' argument that the 'survival' language of paragraph 7(g) of the IMA trumps paragraph 7(h) is belied by the opening language of 7(h): 'Notwithstanding anything in this Agreement to the contrary ….'" *Id.* at 20 n.13. There are several problems with Defendants' assertion that this single sentence preserves their current argument. First, courts generally do not consider an argument mentioned only in a footnote to be adequately raised. *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 107 (2d Cir. 2012); *see also Gross v. Rell*, 585 F.3d 72, 95 (2d Cir. 2009); *Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001); *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("[A]n argument made only in a footnote was inadequately raised."); *United States v. Restrepo*, 986 F.2d 1462, 1463 (2d Cir, 1993). The absence of citations to authority further supports the Court's conclusion that this argument was not properly raised. Finally, Defendants' language failed to address Plaintiffs' argument, which was not that Section 7(g) "trumps" Section 7(h), but rather that Defendants' interpretation of Section 7(h) would needlessly render Section 7(g) meaningless and therefore render the contract "absurd."

Dkt. 47 at 18 (citing *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992)). While Defendants now argue that the canon of interpretation affording "notwithstanding" the broadest possible meaning prevails even when such an interpretation renders another provision of the contract meaningless, *see Warberg Opportunistic Trading Fund, L.P. v. GeoResources, Inc.*, 112 A.D.3d 78, 83-84 (1st Dep't 2013), there was nary a whisper of this argument in their Motion to Dismiss.

Finally, Defendants cite to their Reply Memorandum in support of their Motion to Dismiss, Dkt. 50 at 3, which asserts, in one sentence, that "Plaintiffs' argument that application of the cap to actions arising after termination of the IMA would render the entire indemnification section 'meaningless' is [] contradicted by the language of 7(h), which provides that it applies '[n]otwithstanding anything in this agreement to the contrary.'" The Defendants' reply brief also had a footnote that stated: "Indeed, the converse is true: to read Section 7 the way the Plaintiffs contend would render this phrase meaningless." *Id.* at 3 n.4. These glancing references to the word "notwithstanding" in Section 7(h) do not preserve Defendants' arguments for several reasons. First, the argument in the Reply Memorandum purported to address "Plaintiffs' argument that application of the cap to actions arising after termination of the IMA **would render the entire indemnification section meaningless.**" *Id.* (emphasis added). Even if the Court were to read Defendants' text as applying to Section 7(g) in particular, rather than "the entire indemnification section" – which is a stretch – Defendants' argument simply did not contain the crucial argument that they now seek to advance, which is that the plain reading (rather than the parties' intent) of a "notwithstanding" clause governs even when that reading may be inconsistent with the parties' intent and will unnecessarily render another section wholly meaningless. This argument is simply not the one proffered in the two relevant sentences in Defendant's reply brief.

Even if it were, Defendants' argument would have been raised in two sentences of a reply brief; that is insufficient to preserve the issue. *See Coal. on W. Valley Nuclear Wastes v. Chu*, 592 F.3d 306, 314 (2d Cir. 2009) ("Appellant[s'] two-sentence legal analysis in their opening brief is insufficient to preserve this issue."); *Tolbert*, 242 F.3d at 75 ("'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)); *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993) ("Arguments may not be made for the first time in a reply brief."). To preserve an argument a litigant should "state the issue *and* advance an argument." *Frank v. United States*, 78 F.3d 815, 833 (2d Cir.), *vacated on other grounds*, 521 U.S. 1114 (1997).

In short, Defendants' new argument was not raised in their Motion to Dismiss. It has not yet been considered by the Court; a Motion for Reconsideration is not the appropriate mechanism to raise the issue. *Gurvey v. Cowan, Liebowitz & Latman, P.C.*, No. 06-CV-1202(HBP), 2014 WL 5690414, at *1 (S.D.N.Y. Nov. 5, 2014) ("For present purposes, it is sufficient to note that a motion for reconsideration is not a vehicle for advancing new facts, new theories or new arguments that were not previously called to the court's attention."); *Dorchester Fin. Sec., Inc. v. Banco BRJ S.A.*, No. 11-CV-1529(KMW), 2014 WL 5364102, at *4 (S.D.N.Y. Oct. 22, 2014) ("Having missed [their] opportunity at the motion to dismiss stage, [Defendants are] foreclosed from raising [their new] argument now, regardless of its merits.").[3]

[3] At oral argument, Defendants suggested that their scanty treatment of this argument, without supporting case law, would have been more recognizable if the Court had permitted them longer briefs. The Court is unmoved. Defendants were permitted to deviate from the standard page limits and chose to dedicate significant portions of their expanded brief to meritless arguments regarding venue and personal jurisdiction, *inter alia*.

**B. Inter-Party Indemnification**

Defendants argue that the part of the Court's prior opinion addressing the Investment Management Agreement's ("IMA") indemnification for inter-party suits constitutes a clear error. In support of this assertion, Defendants repackage arguments addressed by the Court's prior opinion. The Court thus again rejects Defendants' arguments that the discussion of, *inter alia*, "fines and penalties" and "pleas of *nolo contendere*" in the IMA forecloses the possibility that the parties unmistakably intended the IMA's indemnification provision to *also* cover inter-party claims. *Ripley I*, 2014 WL 4188099, at *10.

The only "new" development Defendants cite is an opinion from the Northern District of New York that was available prior to their motion to dismiss; that decision is easily distinguished. *See* Def. Mem. Law at 5-7 (citing *Islip U-Slip LLC v. Gander Mountain Co.*, 2 F. Supp. 3d 296 (N.D.N.Y. 2014)). The *Islip* opinion does not alter the Court's analysis. The landlord-tenant agreement in *Islip* appeared on its face to address the possibility that a third-party would sue the landlord for the tenant's misuse of the property and required the tenant to reimburse the landlord for such a lawsuit. *Id.* The IMA in this case, conversely, expressly contemplates the possibility of inter-party lawsuits; it provides, *inter alia*, that Plaintiffs "shall not be liable to the [Defendants] for any reason whatsoever . . . ." FAC Ex. A § 7(a). It repeatedly disclaims Plaintiffs' liability to the Defendants for the then-uncertain validity of the Defendants' tax-shelter scheme. *See, e.g., id.* § 7(b) ("[Plaintiffs are] not required to inquire into or take into account the effect of any tax laws or the tax position of the [Defendants] in connection with managing the Account. To the fullest extent permitted by law, neither the [Plaintiffs, their] members or any of their respective affiliates . . . shall be liable in any manner to the [Defendants] with respect to the effect of any . . . taxes of any nature on the Account or the [Defendants] . . . ."). The IMA is therefore distinct from the landlord-tenant agreement in *Islip*

and from the agreements at issue in the other cases on which the Defendants rely. *See* Def. Mem. Law at 7-8 (citing *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 492 (1989) and *Bridgestone/Firestone, Inc. v. Recovery Credit Servs.*, 98 F.3d 13, 21 (2d Cir. 1996)).

Defendants also take issue with the Court's statement that it "could plausibly infer the authors' unmistakably clear intent that section seven of the IMA provide for indemnification for inter-party suits." Reply at 7-9 (quoting *Ripley I*, 2014 WL 4188099, at *10). Defendants assert that this finding is inconsistent with the Second Circuit's admonition that "[u]nder New York law, 'the court should not infer a party's intention' to provide counsel fees as damages for a breach of contract 'unless the intention to do so is unmistakably clear' from the language of the contract.'" *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003) (quoting *Hooper*, 74 N.Y.2d at 492). These two statements are, however, consistent. The Court has found that Plaintiffs' reading of the IMA – that it unmistakably provides for inter-party indemnification – is one plausible reading of the agreement based on its text alone. Defendants are free to argue that there is another plausible reading of the IMA and that it is, therefore, ambiguous, but such a potential argument does not entitle them to judgment on a motion to dismiss.

Defendants juxtapose the Court's assertion that it could "infer" the drafters' unmistakably clear intent to provide for inter-party indemnification with its excerpt of the *Oscar Gruss* quotation, which provides that "'[u]nder New York law, the court should not infer a party's intention' to extend a general indemnification duty to cover actions between the parties." *Ripley I*, 2014 WL 4188099, at *10 (quoting 337 F.3d at 199) (other quotation marks omitted). The latter quotation requires courts to cabin "general indemnification duties," meaning those that do not provide a basis for the belief that they are intended to cover inter-party suits. It does not require courts to stop using the power of inference altogether in interpreting indemnification

clauses – indeed, the Second Circuit has employed this logical tool to find implicit inter-party indemnification provisions after it decided *Oscar Gruss*. In *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, then-Judge Sotomayor interpreted a contract that contained two different indemnification clauses, one in the original version of the contact and a second added later. 418 F.3d 168, 178 (2d Cir. 2005). "[T]he parties did not simply copy the structure and wording of the first provision in drafting the second; instead, they wrote an indemnity clause that sweeps more broadly, providing for reimbursement of attorney's fees regardless of the nature of the underlying action." *Id.* The Second Circuit inferred from the "broad language of the second provision, when read in conjunction with the first provision," the unmistakable – but not explicit – intent of the parties that the second provision would cover inter-party suits. *Id.* at 178-79. It is at least plausible that a similar inference should be made in this case.

In the absence of any new evidence or new legal authorities, the Defendants have not articulated a basis for the Court to reconsider its prior decision. Accordingly, their motion for reconsideration is denied.

**II. Defendants' Motion for Certification under 28 U.S.C. § 1292(b) Is Denied**

Next, Defendants move for certification of the *Ripley I* Opinion under 28 U.S.C. § 1292(b), which permits the Court of Appeals "to exercise appellate jurisdiction over certain appeals from non-final orders when the district court advises, and the court of appeals agrees, that the district court's decision involves 'a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal may materially advance the ultimate termination of the litigation.'" *Acumen Re Mgmt. Corp. v. Gen. Sec. Nat'l Ins. Co.*, 769 F.3d 135, 143 n.15 (2d Cir. 2014). "Congress passed 28 U.S.C. § 1292(b) primarily to ensure that the courts of appeals would be able to 'rule on ephemeral questions of law that might disappear in the light of a complete and final record.'" *Weber v. United States*,

484 F.3d 154, 159 (2d Cir. 2007) (quoting *Koehler v. Bank of Berm. Ltd.*, 101 F.3d 863, 864 (2d Cir. 1996)) (alterations omitted). Until the district court certifies an order, "the certification decision is entirely a matter of discretion for the district court." *In re Roman Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 36 (2d Cir. 2014) (*per curiam*). "The Second Circuit 'urges the district courts to exercise great care in making a § 1292(b) certification.'" *Childers v. N.Y. and Presbyterian Hosp.*, --- F. Supp. 3d ---, No. 13-CV-5414(LGS), 2014 WL 2815676, at *21 (S.D.N.Y. June 23, 2014) (quoting *Westwood Pharm., Inc. v. Nat'l Fuel Gas Dist. Corp.*, 964 F.2d 85, 89 (2d Cir. 1992)) (alteration omitted).

**A. Controlling Question of Law**

Defendants have identified three questions of law that they assert are controlling: (1) whether the IMA's inter-party indemnification language is ambiguous; (2) if not, what it unambiguously means; and (3) whether the liability cap limits recovery under the IMA to zero dollars. All three rely on questions of contractual interpretation. "Whether a contract is ambiguous is a question of law," and, if it is not, then the meaning of the contract is determined as a matter of law. *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011); *see also White v. Cont'l Cas. Co.*, 9 N.Y.3d 264, 267 (2007) ("the interpretation of [unambiguous] provisions is a question of law for the court.").

Plaintiffs do not challenge that these questions are controlling, although the Court has its doubts. "In determining whether a controlling question of law exists, the district court should consider whether: reversal of the district court's opinion could result in dismissal of the action; reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action[;] or[] the certified issue has precedential value for a large number of cases." *In re Lehman Bros. Holdings Inc.*, No. 13-CV-2211(RJS), 2014 WL 3408574, at *1 (S.D.N.Y. June 30, 2014)) (quoting *S.E.C. v. Credit Bancorp, Ltd.*, 103 F. Supp.

2d 223, 227 (S.D.N.Y. 2000)) (alteration omitted); *see also Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990). Defendants concede that a finding for them on the purely legal question whether the IMA unambiguously precludes inter-party indemnification would not terminate this matter – Plaintiffs' causes of action for breach of the Subscription Agreement would survive. *See supra* at 3 n.2. Moreover, the Circuit's precedential views on the meaning of the contractual language used by the parties in this case would have minimal value for other cases. Nevertheless, the Court assumes that Plaintiffs' failure to weigh in qualifies as a concession that the Circuit's judgment might "significantly affect the conduct of the action," and that Defendants have therefore shown that this is a "controlling question of law" for the purposes of § 1292(b). *Murray v. UBS Sec., LLC*, No. 12-CV-5914(KPF), 2014 WL 1316472, at *3-4 (S.D.N.Y. Apr. 1, 2014).

**B. Substantial Ground for Difference of Opinion**

The requirement that a certified order contain substantial ground for difference of opinion cannot be met simply because one party is dissatisfied with the Court's ruling, any more than it can be defeated simply because the Court believes itself to be correct. *Cf. In re Citigroup Pension Plan ERISA Litig.*, No. 05-CV-5296(SAS), 2007 WL 1074912, at *2 (S.D.N.Y. Apr. 4, 2007); *accord Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, No. 11-CV-5994(CM), 2012 WL 2952929, at *8 (S.D.N.Y. July 18, 2012). Instead, "[t]he requirement of § 1292(b) that there be a 'substantial ground for difference of opinion' is satisfied where (1) there is conflicting authority on the issue, or (2) the issue is particularly difficult, and one of first impression in the Second Circuit." *In re Trace Int'l Holdings, Inc.*, No. 04-CV-1295(KMW), 2009 WL 3398515, at *3 (S.D.N.Y. Oct. 21, 2009) (citing *Klinghoffer*, 921 F.2d at 25, and *Padilla v. Rumsfeld*, 256 F. Supp. 2d 218, 221 (S.D.N.Y. 2003)). Neither is true here. The

authority on the questions of inter-party indemnification and the scope of notwithstanding clauses is not conflicting, and Defendants do not take issue with the Court's understanding of the law; Defendants simply disagree with the district court's *application* of well-established New York contract law. This is not sufficient. *See Citigroup Pension Plan*, 2007 WL 1074912, at *2 ("'A mere claim that a district court's decision was incorrect does not suffice to establish substantial ground for a difference of opinion.'") (quoting *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.*, 426 F. Supp. 2d 125, 129 (S.D.N.Y. 2005)); *see also In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996) (*per curiam*). Moreover, there is no question of first impression in this case, only a run-of-the-mill disagreement about the application of known law to the contract at issue.

**C. Material Advancement of the Litigation**

Regardless of whether Defendants are successful on appeal, they will have postponed the resolution of this case, which contains causes of action unaffected by the instant dispute. Additional delay would become particularly problematic insofar as advancement of costs is an empty promise when deferred until at or near the termination of the underlying litigation. "Indeed, by the time the appeal is resolved, the advancement issue could be mooted by the conclusion of the litigation for which the [party] needed the advance." *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1232 (10th Cir. 2009). On balance, then, certification is likely to do more harm than good to the future of this litigation.

**D. Exceptional Circumstances**

Even were all of the requirements of 28 U.S.C. § 1292(b) met, the Court would not certify this question. Certification requires "exceptional circumstances justifying a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Transp. Workers Union of Am., Local 100, AFL-CIO v. New York City Transit Auth.*, 505 F.3d

226, 229 (2d Cir. 2007) (internal quotation marks and alteration omitted); *see Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978). The only prejudice that would result from requiring the Defendants to litigate this action until entry of a final judgment is the cost of litigation; this is not, in itself, a sufficient basis to certify an otherwise-unexceptional order. "Generally, such added delay and expense cannot justify an interlocutory [appeal] except in "'big' cases, in which it is expected that prolonged pretrial and protracted trial efforts will follow the disputed ruling.'" *Lehman Bros. Holdings*, 2014 WL 3408574, at *3 (quoting 16 Charles Alan Wright et al., *Federal Practice and Procedure* § 3929 (3d ed.)). While this case is not the smallest on the Court's docket, it is not a "big case" for the purposes of Section 1292(b).

Defendants' motion to certify the Court's August 25, 2014 Opinion for interlocutory appeal is therefore denied.

**CONCLUSION**

For the foregoing reasons, Defendants' motion for reconsideration and certification is DENIED. The Clerk of the Court is respectfully directed to terminate Dkt. 62.

**SO ORDERED.**

**Date: November 12, 2014**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**